**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Baltimore Division**

| | | |
|---|---|---|
| **SAMPSON K. KYERE, JR.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No.   1:23-cv-3158-JRR** |
| | ) | |
| | ) | |
| **LIFEBRIDGE HEALTH, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION AND DISMISS**

Micah E. Ticatch, Esq.
MD Fed. Bar No. 21208
Isler Dare, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for Defendants*

In this action, Plaintiff has asserted eight counts against Defendants relating to his prior employment at Sinai Hospital of Baltimore, Incorporated ("Hospital").  But, as part of his employment, Plaintiff agreed that "any controversy or claim arising out of [his] employment" would be subject to arbitration.  Because all the claims asserted in the Complaint are covered by that Arbitration Clause, the Court should compel arbitration and dismiss this action.

## BACKGROUND FACTS

Plaintiff was formerly employed as a physician by the Hospital.  *See* Exhibit 1.  The Hospital is a subsidiary of Defendant LifeBridge Health, Inc. ("LifeBridge").

As part of his employment, Plaintiff entered into a letter of agreement ("LOA") with the Hospital, effective June 1, 2021.  *See id*.; *see also* Compl. ¶ 25.  The LOA specifically incorporated the Hospital's Standard Terms as part of the agreement.  *See* Exhibit 1 at 4 ¶ K.  Among other things, those terms state:

> [T]he exclusive method for resolving any controversy or claim arising out of a physician's employment, including any termination or nonrenewal, will be as set out below. . .
>
> If a dispute arises between the Hospital and a physician, the physician and a representative of the Hospital will meet informally within seven days to discuss the areas of disagreement and negotiate in good faith regarding possible solutions. . .
>
> If that process is unsuccessful in resolving the dispute, and either the physician or the Hospital wishes to continue the dispute resolution process, the dispute must be submitted to arbitration.

*Id*., Attachment 3, at 13-14 (the "Arbitration Clause") (emphasis added).

In early 2022, Plaintiff's supervisor, Dr. Daniel Durand, received input from Hospital staff that indicated Plaintiff might have an impairment, which might in turn put the Hospital's patients' safety at risk.  *See* Compl. ¶ 41.  Dr. Durand initially wished to have two doctors informally

observe Plaintiff while he worked, but Plaintiff refused to consent to that observation.  *See id.* ¶¶ 46, 55, 74.  Instead, Plaintiff insisted that any evaluation of him needed to be done through the Hospital's Impaired Physician Committee ("IPC"), which the Hospital eventually agreed to do.  *See id.* ¶ 117.  Among other individuals, the IPC committee included Defendants Dr. Elizabeth Zadzielski and Dr. Omar Zalatimo as members.  *See id.*

The IPC asked Plaintiff to undergo an evaluation by through its Aging Surgeon's Program, which Plaintiff refused.  *See id.* ¶ 143.  After his refusal, the IPC withdrew that request and instead asked Plaintiff to undergo a functional capacity evaluation, as well as an evaluation by a neurologist and ophthalmologist.  *See id.* ¶ 144.  Plaintiff refused this as well.

Shortly thereafter, Plaintiff, through his counsel, negotiated a voluntary resignation in exchange for the IPC closing its investigation.  *See id.* ¶ 163.

Despite the Arbitration Clause, on October 19, 2023, Plaintiff filed his Complaint in Baltimore City Circuit Court.  On November 20, 2023, Defendants jointly removed the case to this Court.  (Dkt. 1.)

In the Complaint, Plaintiff alleges several claims against LifeBridge arising out of his employment, including:

      (i)      discrimination based on an actual or perceived disability (Count 1);

      (ii)     improper medical inquiry and examination (Count 2);

      (iii)    constructive discharge (Count 3);

      (iv)    retaliation for Plaintiff's request for a reasonable accommodation (Count 4);

      (v)     breach of the LOA (Count 6); and

      (vi)    breach of contract based on the Hospital's Bylaws (Count 7).

Additionally, in Count 5, Plaintiff asserts a claim of tortious interference against Dr. Durand, for alleged interference with the LOA.  Lastly, in Count 8, Plaintiff asserts a claim of

gross negligence against Dr. Durand, Dr. Zadzielski, and Dr. Zalatimo for their conduct as part of the IPC.

As explained below, each of these claims should be compelled to arbitration.

## STANDARD

Because an arbitration agreement is a kind of forum-selection clause, this Court considers motions to dismiss based on an arbitration agreement under Rule 12(b)(3).  *See, e.g.*, *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 548 (D. Md. 2019); *Aletum v. Adecco USA, Inc.*, 2021 WL 1530080, at *2 (D. Md. 2021).   On such a motion, the plaintiff bears the burden of demonstrating that the forum is proper.  *Stone*, 361 F. Supp. 3d at 549.  Further, in evaluating the motion, the Court is free to consider evidence outside the pleadings.  *See id.* at 550.

## ARGUMENT

### A.      MUAA Requires Enforcement of Arbitration Agreements.

The Arbitration Clause specifically states that the Maryland Uniform Arbitration Act ("MUAA") applies.  *See* Exhibit 1, Attachment 3, at 13.  Like the Federal Arbitration Act, MUAA provides that a written agreement to arbitrate a dispute between the parties "is valid and enforceable, and is irrevocable, except upon grounds that exist at law or in equity for the revocation of a contract."  Md. Code Ann., Cts. & Jud. Proc. § 3-206(a); 9 U.S.C. § 2.  The Act "expresses the legislative policy favoring enforcement of agreements to arbitrate."  *Park Plus, Inc. v. Palisades of Towson, LLC*, 478 Md. 35, 49 (2022).  As a result, a court's job on a motion to compel arbitration is reduced to "the resolution of a single issue—is there an agreement to arbitrate the subject matter of a particular dispute."  *Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 104 (1983).  Furthermore, "where an arbitration agreement exists, ambiguities as to arbitrability [must] be resolved in favor of arbitration."  *Rourke v. Amchem Prod., Inc.*, 384 Md. 329, 356 (2004).

**B.     The Arbitration Clause is Part of an Enforceable Contract.**

The initial inquiry for the Court is whether the parties' agreement, which contains the Arbitration Clause, is enforceable.  *See Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 590 (2006).  In this case, there seems to be no dispute that the LOA is a valid agreement, as Plaintiff has sued to enforce the very same contract.  In such circumstances, a plaintiff is estopped from arguing against the validity of the contract.  *See Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 628 (4th Cir. 2006).

**C.     All the Claims Against LifeBridge are Subject to Arbitration.**

LifeBridge[1] has the right to have all of the claims asserted against it moved to arbitration.  The Arbitration Clause encompasses "any controversy or claim arising out of [Plaintiff's] employment, including any termination or nonrenewal."  *See* Exhibit 1, Attachment 3, at 13-14.  Counts 1, 2, and 4 are claims that Plaintiff was subject to employment discrimination, which clearly arise out Plaintiff's employment.  *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991) (compelling ADEA discrimination claim to arbitration as "arising out of employment").

Count 3 is a claim regarding Plaintiff's termination, which the Arbitration Clause explicitly encompasses.  Count 4 is a claim for breach of the employment terms in the LOA.  Lastly, Count 7 is a claim for breach of the Hospital's bylaws, which Plaintiff alleges was a contract governing how the Hospital would interact with him during his employment.

---

[1] The LOA is technically an agreement between LifeBridge's subsidiary, the Hospital, and Plaintiff.  However, the Complaint treats LifeBridge and the Hospital as a single entity.  *See, e.g.*, Compl. ¶¶ 24-25 (alleging Plaintiff was employed by LifeBridge under the LOA); ¶¶ 347 – 371 (asserting a claim for breach of the LOA against LifeBridge).  Moreover, even if Plaintiff had alleged otherwise, LifeBridge could compel arbitration under agency and estoppel principles.  *See Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001) (agency); *Horneffer v. St. Joseph Med. Ctr.*, 2012 WL 983782, at *5-6 (D. Md. 2012) (estoppel).

As each of these claims fit squarely within the Arbitration Clause, Plaintiff should be compelled to arbitrate them.

**D.      Plaintiff's Claim for Tortious Interference is Subject to Arbitration.**

In Count 5 of the Complaint, Plaintiff alleges that Dr. Durand tortiously interfered with the LOA because he "induced [LifeBridge] to breach its contract with [Plaintiff.]"  *See* Compl. ¶¶ 311, 342.  During the relevant time period, Dr. Durand was an employee of the Hospital acting as Chairman of the Department of Radiology, and Plaintiff's direct supervisor.  *See* Compl. ¶ 12.

As an employee of the Hospital, Dr. Durand is entitled to compel Plaintiff to arbitration under the Arbitration Clause.  *See, e.g.*, *Dennie v. MedImmune, Inc.*, 2017 WL 2930462, at *4 (D. Md. 2017) ("Where a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements.").[2]

This is especially true in a case such as this one where all of Dr. Durand's alleged actions that purportedly render him liable for the alleged tort, consists of conduct that is entirely consistent with him being employed as Chair of the Department and Plaintiff's supervisor.  *See* Compl. ¶ 325 (Dr. Durand shared concerns about Plaintiff's ability to practice medicine with LifeBridge); ¶ 331 (Dr. Durand opposed Plaintiff's plan to train other radiologists for stroke therapy); ¶ 335 (Dr. Durand reported "progressive changes" in Plaintiff's "gait and mobility" to President of Medical Staff); ¶ 338 (Dr. Durand served on IPC).

Further, because this claim boils down to allegations that Plaintiff lost his employment because his supervisor made internal reports to the Hospital, the claim undoubtedly is one "arising

---

[2] In addition to agency principles, Dr. Durand also has standing to compel arbitration because Plaintiff alleges "interdependent and concerted misconduct" by Dr. Durand, LifeBridge, and the remaining Defendants, and thus, he is equitably estopped from avoiding the Arbitration Clause as to his claim against Dr. Durand.  *See Dennie*, 2017 WL 2930462, at *4.

out of [Plaintiff's] employment, including termination." As such the claim is covered by the Arbitration Clause, Plaintiff should be compelled to arbitrate it as well.

**E.      Plaintiff's Claim for Gross Negligence is Subject to Arbitration.**

In Count 8, Plaintiff claims that Hospital's Impaired Practitioner Committee acted in a grossly negligent manner when it attempted to evaluate Plaintiff's possible impairment, and that as a consequence, each individual member of the IPC is personally liable to Plaintiff. *See* Compl. ¶¶ 428-437.

As committee members of the IPC, each Defendant to this count is, by definition, an agent of the Hospital. *See* Compl. ¶¶ 64-66 (IPC is a medical review committee of the Hospital); *see also id.* ¶¶ 12-14 (Dr. Durand, Dr. Zadzielski, and Dr. Zalatimo are all employees of the Hospital). As such, they have standing to compel arbitration. *See Dennie*, 2017 WL 2930462, at *4.

Additionally, this claim falls squarely within the scope of the Arbitration Clause, as it alleges that: (i) Dr. Durand, Dr. Zadzielski, and Dr. Zalatimo were members of the internal review committee of Plaintiff's employer; (ii) who acted negligently when attempting to evaluate whether Plaintiff was capable of performing his job duties in a safe manner; and (iii) that negligence caused Plaintiff's termination of employment. There would seem to be little question that this claim arises from Plaintiff's employment with the Hospital. As such, this claim should be compelled to arbitration as well.

**F.      The Instant Action Should be Dismissed.**

Where all the claims brought in a lawsuit are subject to arbitration, the Court should dismiss the action. *See, e.g.*, *id.* at *6; *Malamatis v. ATI Holdings, LLC*, 2022 WL 1591406, at *26 (D. Md. 2022). For the reasons established above, all eight of Plaintiff's claims are required to be arbitrated. Therefore, in addition to compelling arbitration, this Court should dismiss the instant action.

## **CONCLUSION**

For the reasons outlined above, Defendants respectfully request that this Court compel Plaintiff to arbitrate all the claims asserted in the Complaint and dismiss this action.

Dated: November  27, 2023                         Respectfully submitted,

                                                                    /s/ Micah E. Ticatch
                                                                    Micah E. Ticatch, Esq.
                                                                    MD Fed. Bar No. 21208
                                                                    ISLER DARE, P.C.
                                                                    1945 Old Gallows Road, Suite 650
                                                                    Vienna, Virginia 22182
                                                                    (703) 748-2690
                                                                    (703) 748-2695 (fax)
                                                                    mticatch@islerdare.com

                                                                    *Counsel for Defendants*

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of November 2023, I will electronically file, which

will  serve a copy of the foregoing via electronic mail:

Tiffany M. Releford, Esq.
Samuel P. Morse, Esq.
Whiteford, Taylor & Preston, LLP
8830 Stanford Boulevard, Suite 400
Columbia, MD 21045
treledord@whitefordlaw.com
shaines@whitefordlaw.com
smorse@whitefordlaw.com
*Counsel for Plaintiff*


         /s/ Micah E. Ticatch
Micah E. Ticatch, Esq.
MD Fed. Bar No. 21208
Isler Dare, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for Defendants*